**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CALVIN PARKER,

      Petitioner,

                                  CASE NO. 5:10-CV-14304

v.                                  HONORABLE JOHN CORBETT O'MEARA
                                  UNITED STATES DISTRICT JUDGE

CATHY BAUMAN,

      Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS

      Calvin Parker, ("Petitioner"), presently confined at the Chippewa Correctional Facility in Kincheloe, Michigan, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction for four counts of first-degree criminal sexual conduct, M.C.L.A. 750.520b(1)(a); and one count of second-degree criminal sexual conduct, M.C.L.A. 750.520c(1)(a). For the reasons stated below, the application for writ of habeas corpus is **DENIED.**

### I. Background

      Petitioner was convicted of the above charges following a jury trial in the Wayne County Circuit Court. This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th Cir. 2009):

      Defendant was convicted of engaging in sexual activity with his daughter, who

1

was under the age of 13. The victim testified that the first incident occurred when she was in the sixth or seventh grade. She was playing a game with defendant and ran into the basement, where her room was located, to hide. After defendant found her, he took her into her room and touched her breasts and her genital area. Defendant touched her in a similar manner on subsequent occasions. Later, when the victim entered the seventh grade, defendant began having intercourse and oral sex with her and digitally penetrating her. The victim eventually told her mother what happened and the matter was reported to the authorities.

Vincent Palusci, a child abuse pediatrician who was qualified as an expert in his field, examined the victim, who reported "she had had sex with her father." She reported that there "was no force involved, ... but it did involve multiple events and multiple different types of contact." A genital exam showed two tears in the hymen. Palusci could not state what caused the tears, which were not fresh, but deemed at least one to be "definitive evidence of trauma to the area."

*People v. Parker,* No. 275682, * 1 (Mich.Ct.App. February 12, 2008).

Petitioner's conviction was affirmed on appeal. *Id., lv. den.* 481 Mich. 915, 750

N.W.2d 216 (2008).

Petitioner then filed a post-conviction motion for relief from judgment, which was

denied. *People v. Parker,* No. 06-00958-01 (Third Judicial Circuit Court, July 7, 2009).

The Michigan appellate courts denied petitioner leave to appeal. *People v. Parker,* No.

295473 (Mich.Ct.App. April 15, 2010); *lv. den.* 488 Mich. 870, 788 N.W.2d 431 (2010).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Defendant was denied his state and federal rights to effective assistance of counsel where counsel failed to impeach key witnesses on prior acts; and failed to use witnesses on Defendant's behalf.

II. Due process requires a new trial based on newly discovered evidence that the alleged victim fabricated her story as a way to get attention. Defendant was denied a fair trial where his daughter lied about the criminal sexual conduct as

2

proven through the letter sent to him while incarcerated stating, "Daddy I know when I told that it was wrong . . ."

III. The jury should not have heard Laura Montgomery and Dr. Palusci testify that [A.W.] [1] had told them Mr. Parker "had sex" with her, that [A.W.] felt "dirty" and should not have considered Dr. Palusci's report because it was all inadmissible hearsay.

IV.  The prosecutor committed misconduct and denied Mr. Parker a fair trial by arguing that [A.W.] had described "very typical behavior for sexual abusers" even though she had produced no evidence of that in her case.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas

cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the

state court arrives at a conclusion opposite to that reached by the Supreme Court on a

---

[1]  Because the victim was a minor at the time of the offenses and petitioner's trial, the Court will refer to her by her initials to protect her privacy.

question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,'and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* ( citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003).  Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and

4

then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786. Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Thus, a "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford,* 537 U.S. at 24. Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 131 S. Ct. at 786-87. Finally, in reviewing petitioner's claims, this Court must remember that under the federal constitution, petitioner was "entitled to a fair trial but not a perfect one." *Lutwak v. United States,* 344 U.S. 604, 619 (1953).

5

### III.  Discussion

**A.  Claim # 1.   The ineffective assistance of trial counsel claim.**

Petitioner first contends that he was denied the effective assistance of trial counsel.

Respondent contends that petitioner's first and second claims are procedurally defaulted because he raised them only for the first time in his post-conviction motion for relief from judgment and failed to show cause and prejudice, as required by M.C.R. 6.508(D)(3), for failing to raise these claims in his appeal of right.

The Supreme Court has noted that "a procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on the procedural bar." *Harris v. Reed*, 489 U.S. 255, 263 (1989).  If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

In the present case, the Michigan Court of Appeals and the Michigan Supreme Court rejected petitioner's post-conviction appeal on the ground that "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." These orders, however, did not refer to subsection (D)(3) nor did they mention

6

petitioner's failure to raise these claims on his direct appeal as their rationale for rejecting his post-conviction claims.  Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or a denial of post-conviction relief on the merits, the orders are unexplained. *See Guilmette v. Howes*, 624 F. 3d 286, 291 (6th Cir. 2010).  This Court must "therefore look to the last reasoned state court opinion to determine the basis for the state court's rejection" of petitioner's claims. *Id.*

In the present case, although the trial court judge mentioned the cause and prejudice provisions contained within M.C.R. 6.508(D)(3) in the beginning of his opinion, the judge rejected petitioner's post-conviction claims on the merits without specifically and clearly invoking M.C.R. 6.508 (D)(3) or petitioner's failure to raise these claims on his direct appeal as his rationale for rejecting petitioner's claims. Because the last reasoned state court decision appears to have rejected petitioner's first and second claims on the merits, this Court concludes that petitioner's first and second claims are not procedurally defaulted. *Guilmette*, 624 F. 3d 289, 292.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the

7

wide range of reasonable professional assistance. *Id.* In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689. Second, the defendant must show that such performance prejudiced his defense. *Id.* To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694. "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F. 3d 372, 379 (6th Cir. 2011)(quoting *Harrington*, 131 S. Ct. at 792). The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 130 S. Ct. 383, 390-91 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S. Ct. at 785. Indeed, "because the *Strickland* standard is a general standard, a state court

has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles,* 129 S. Ct. at 1420 (citing *Yarborough v. Alvarado*, 541 U.S. at 664). Pursuant to § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.* This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."*Harrington*, 131 S. Ct. at 785. "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)).

> Because of this doubly deferential standard, the Supreme Court has indicated that:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

> *Harrington v. Richter*, 131 S. Ct. at 788.

In addition, a reviewing court must not merely give defense counsel the benefit of the doubt, but must also affirmatively entertain the range of possible reasons that counsel may have had for proceeding as he or she did. *See Cullen v. Pinholster,* 131 S. Ct. 1388, 1407 (2011).

Finally, this Court is aware that "[R]eliance on 'the harsh light of hindsight' to cast doubt on a trial that took place" over five years ago "is precisely what *Strickland* and AEDPA seek to prevent." *Harrington v. Richter*, 131 S. Ct. at 789.

Petitioner contends that trial counsel was ineffective for failing to call his fiancee,

9

Debra Parker and his sister, Gloria Parker Conyers, to impeach the victim's credibility. Petitioner claims that both witnesses would have testified that the victim fabricated the sexual assault charges in order to get attention from her mother and that the victim had told them that she was going to make petitioner "pay" for not being a part of her life when she was younger. Petitioner also claims that the women would have testified that the victim was sexually promiscuous, which petitioner claims could have established an additional motive on the victim's part to fabricate the charges against petitioner because the victim was angry at petitioner for punishing her for her sexually promiscuous behavior.

In the present case, the victim admitted to feeling neglected by her mother and trying to get attention from her and that she enjoyed going over to petitioner's house because he would give her attention. The victim indicated that she had attempted various ploys at home to win attention from her mother, including being disrespectful and talking back, refusing to do as she was told, lying to her teacher, and ultimately, going to live with petitioner, whom she had not seen in ten years. (Tr. II, pp. 36-37, 39, 63-64, 67-68, 73, 98-101, 109-117). The victim acknowledged telling Debra Parker that she was going to make petitioner pay for not being there when she was younger. (*Id.,* pp. 100, 112). The victim's mother also testified that the victim seemed happier when she was at petitioner's home because she was the only child living there and petitioner would pay attention to her. (Tr. I, pp. 66, 69). The victim's mother also testified that the victim had previously lied about an incident involving her half-brother and a belt, and that the

10

victim did not tell the truth to people at her school about the incident. (*Id.,* pp. 114-15).

Petitioner was not prejudiced by counsel's failure to call Debra Parker or Gloria Conyers to testify because their testimony was cumulative of other evidence and witnesses presented at trial in support of petitioner's claim that the victim had fabricated the sexual assault allegations against him to gain attention from her mother and to make petitioner "pay" for not being a part of her life when she was younger. *Wong,* 130 S. Ct. at 387-388; *See also United States v. Pierce,* 62 F. 3d 818, 833 (6th Cir. 1995); *Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 607 (E.D. Mich. 2001). In this case, the jury had significant evidence presented to it that the victim had felt neglected by her mother and had gone to great lengths to get her attention by engaging in negative behavior. The jury also had significant evidence that the victim had threatened to make petitioner "pay" for his earlier neglect. Because the jury was "well acquainted" with evidence that would have supported petitioner's claim that the victim fabricated these charges to gain her mother's attention and to get revenge against petitioner for his earlier neglect, additional evidence in support of petitioner's defense "would have offered an insignificant benefit, if any at all." *Wong,* 130 S. Ct. at 388.

To the extent that petitioner's counsel failed to introduce evidence of the victim's sexual promiscuity, petitioner would not be entitled to relief. As already noted, counsel impeached the victim with the fact that she had felt neglected by her mother and had engaged in extreme measures to win her attention. The victim also admitted that she had told Debra Parker that she would make petitioner "pay" for not being a part of her life

11

when she was younger.  Counsel elicited from the victim's mother testimony that the victim had lied to school authorities about being hit with a belt by her half-brother. Undisclosed impeachment evidence is considered cumulative "when the witness has already been sufficiently impeached at trial.*" Davis v. Booker,* 589 F. 3d 302, 309 (6th Cir.  2009)(quoting *Brown v. Smith*, 551 F. 3d 424, 433-34 (6th Cir. 2008)).  Because the victim's credibility already been impeached, petitioner was not prejudiced by counsel's failure to impeach the victim with cumulative impeachment evidence. *Id.*

Moreover, there is no indication that evidence of the victim's alleged promiscuity would have even been admissible had petitioner's counsel attempted to introduce this evidence.  Under Michigan's rape shield statute, evidence of a sexual assault victim's sexual conduct shall not be admitted unless it involves evidence of the victim's past sexual conduct with the defendant, or is admitted to show "the source or origin of semen, pregnancy, or disease." M.C.L.A. 750.520j (1)(a) and (b).  Petitioner does not suggest that the evidence of the victim's sexual promiscuity should have been admitted to show that someone else had sexually assaulted her, but only to establish a motive on the victim's part to fabricate the charges against petitioner.  Because such evidence would most likely have not been admissible under Michigan's rape shield statute, counsel was not ineffective in failing to seek its admission. *See Capps v. Collins*, 900 F. 2d 58, 61 (5th Cir. 1990).   Petitioner is not entitled to habeas relief on his first claim.

### B.  Claim # 2.  The newly discovered evidence claim.

Petitioner next contends that he is entitled to a new trial based upon newly

12

discovered evidence that would establish his innocence of the charges in the form of a recantation from the victim. The alleged recantation is a handwritten letter purportedly written from the victim to petitioner on March 20, 2008, in which the victim purportedly states that she was wrong for testifying against petitioner. The letter actually indicates that the victim wrote: "Daddy, I know when I told that It [sic] was worry [sic] and Im [sic] sorry about look [sic] I want to come to see you one day if you want me to." [2]

Assuming that the victim's statement could be construed as a recantation of her trial testimony, petitioner would not be entitled to habeas relief.

In *Herrera v. Collins*, 506 U.S. 390, 400 (1993), the Supreme Court held that claims of actual innocence based on newly discovered evidence fail to state a claim for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding. Federal habeas courts sit to ensure that individuals are not imprisoned in violation of the constitution, not to correct errors of fact. *Id., See also Hence v. Smith*, 37 F. Supp.2d 970, 980 (E.D. Mich. 1999). Freestanding claims of actual innocence are not cognizable on federal habeas review, absent independent allegations of constitutional error at trial. *See Cress v. Palmer,* 484 F. 3d 844, 854-55 (6th Cir. 2007)(collecting cases).

Moreover, the Supreme Court's subsequent decision in *House v. Bell*, 547 U.S. 518 (2006) does not alter this Court's adjudication of petitioner's claim, as the Supreme

---

[2] *See* Petitioner's Attachment C.

Court again in that case declined to resolve whether a habeas petitioner may bring a freestanding claim of actual innocence. *Id.* at 554-55. Although the Supreme Court in *House* noted that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim", *Id.* (quoting *Herrera,* 506 U.S. at 417), the Supreme Court has declined to recognize a freestanding innocence claim in habeas corpus, outside of the death-penalty context. Petitioner would therefore not be entitled to relief for his second claim under available Supreme Court precedent. *See Wright v. Stegall*, 247 Fed. Appx. 709, 711 (6th Cir. 2007).

This Court notes that recanting affidavits and witnesses are viewed with "extreme suspicion." *United States v. Chambers*, 944 F. 2d 1253, 1264 (6th Cir. 1991); *See also Byrd v. Collins,* 209 F. 3d 486, 508, n. 16 (6th Cir. 2000). In addition, "the skepticism with which a court examines such an affidavit is only heightened when the recanting witness is a family member and the witness may have feelings of guilt or may be influenced by family members seeking to change the witness's story." *U.S. v. Coker*, 23 Fed. Appx. 411, 412 (6th Cir. 2001). Skepticism about recantations is especially applicable in cases of child sexual abuse, where recantation is a recurring phenomenon, such as where family members are involved and the child has feelings of guilt or where family members seek to influence the child to change the story. *United States v. Miner*, 131 F. 3d 1271, 1273-1274 (8th Cir. 1997)(quoting *United States v. Provost*, 969 F. 2d

14

617, 621 (8th Cir. 1992)).

In this case, the victim's purported recantation is unsworn and unauthenticated. An unsworn affidavit from a recanting witness is of questionable validity. *See Cress v. Palmer,* 484 F. 3d at 855 (rejecting actual innocence claim that was based in part on an unsworn statement from a recanting witness).  Moreover, the victim does not offer any convincing explanation as to why she waited almost two years after she initially made the sexual assault allegations against petitioner to recant her story. *See Lewis v. Smith,* 100 Fed. Appx. 351, 355 (6th Cir. 2004)(proper for district court to reject as suspicious a witness' recanting affidavit made two years after petitioner's trial).   Petitioner is not entitled to habeas relief on his second claim.

### C.  Claim # 3.  The admission of the victim's out of court statements.

Petitioner next contends that the trial court erred in permitting the introduction of out of court statements made by the victim to her mother and to her treating physician on the ground that such statements were inadmissible hearsay.  Petitioner further contends that such statements did not qualify as prior consistent statements that would have been admissible pursuant to M.R.E. 801(d)(1)(b), because they were made after the victim had a motive to fabricate her allegations against petitioner.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.*  Thus,

15

errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000); *See also Bridinger v. Berghuis,* 429 F. Supp. 2d 903, 908-09 (E.D. Mich. 2006)(federal habeas courts have no authority to interfere with perceived errors in state law unless the petitioner is denied fundamental fairness in the trial process).

The admissibility of evidence under Michigan's hearsay rules is not cognizable in a habeas corpus proceeding. *See Byrd v. Tessmer,* 82 Fed.Appx. 147, 150 (6th Cir. 2003); *See also Rhea v. Jones*, 622 F. Supp. 2d 562, 589 (W.D. Mich. 2008); *Cathron v. Jones,* 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002)(petitioner's claim that state court erred in admitting hearsay testimony under state evidentiary rule governing declarations against penal interest not cognizable in federal habeas review, where the claim alleged a violation of state law, not a violation of federal constitutional rights). The admission of this evidence in violation of Michigan's rules of evidence would not entitle petitioner to relief.

The admission of a prior consistent statement when the declarant is available for cross-examination at trial, as was the case here, is not a question that rises to the level of a constitutional violation for purposes of habeas corpus relief. *See United States ex. rel. Gonzalez v. DeTella,* 918 F. Supp. 1214, 1222 (N.D. Ill. 1996)(internal citations omitted). Indeed, there is no violation of the Sixth Amendment's Confrontation Clause when the witness testifies at trial and is subject to unrestricted cross-examination. *United*

*States v. Owens,* 484 U.S. 554, 560 (1988); *See also Crawford v. Washington,* 541 U.S. 36, 59, n. 9 (2004); *U.S. v. Mayberry,* 540 F. 3d 506, 516 (6th Cir. 2008).  As the Supreme Court has explained, "where the declarant is not absent, but is present to testify and to submit to cross examination, our cases, if anything, support the conclusion that the admission of his out of court statements does not create a confrontation clause problem." *California v. Green,* 390 U.S. 149, 162 (1970).  In this situation, "the traditional protections of the oath, cross-examination, and opportunity for the jury to observe the witness' demeanor satisfy the constitutional requirements." *Owens,* 484 U.S. at 560 (internal citations omitted).  When a declarant's out-of-court statement is admitted at a criminal defendant's trial, "the question is whether defendant has the *opportunity* to cross-examine the declarant at trial." *Strayhorn v. Booker,* 718 F. Supp. 2d 846, 867 (E.D. Mich. 2010)(emphasis original).  Because A.W. testified at petitioner's trial and was subject to cross-examination, the admission of her out of court statements to her mother and to her physician did not violate petitioner's Sixth Amendment right to confrontation. *See Shannon v. Berghuis,* 617 F. Supp. 2d 596, 604 (W.D. Mich. 2008).

Petitioner's claim about the admission of prior consistent statements that the victim made to her mother and to her physician involves at best an error of state law that is not cognizable in federal habeas review. *See Regan v. Hoffner,* 209 F. Supp. 2d 703, 715 (E.D. Mich. 2002).  Because the victim was subject to cross-examination at petitioner's trial, the admission of her statements to her mother and to her physician presented no Confrontation Clause problems. *Id.*  Because the admission of the victim's

17

prior consistent statements did not deprive petitioner of a fundamentally fair trial, petitioner is not entitled to habeas relief on his third claim. *See Benton v. Booker,* 403 Fed.Appx. 984, 986 (6th Cir. 2010).

**D.  Claim # 4. The prosecutorial misconduct claim.**

Petitioner finally contends that he was deprived of a fair trial because of prosecutorial misconduct when the prosecutor argued that the petitioner had engaged in "very typical behavior for sexual abusers" even though there was no evidence to support this assertion.

Respondent contends that petitioner's prosecutorial misconduct claim is procedurally defaulted because petitioner failed to preserve the issue by objecting at trial and as a result, the Michigan Court of Appeals reviewed the claim for plain error only. *See Parker,* Slip. Op. at * 3.

When the state courts clearly and expressly rely on a valid state procedural bar, federal habeas review is also barred unless petitioner can demonstrate "cause" for the default and actual prejudice as a result of the alleged constitutional violation, or can demonstrate that failure to consider the claim will result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991).  If a petitioner fails to show cause for his procedural default, it is unnecessary for the court to reach the prejudice issue. *Smith v. Murray*, 477 U.S. 527, 533 (1986).  However, in an extraordinary case, where a constitutional error has probably resulted in the conviction of one who is actually innocent, a federal court may consider the constitutional claims

18

presented even in the absence of a showing of cause for procedural default. *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986).  However, to be credible, such a claim of innocence requires a petitioner to support the allegations of constitutional error with new reliable evidence that was not presented at trial. *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

In this case, the Michigan Court of Appeals clearly indicated that by failing to object at trial, petitioner had not preserved his prosecutorial misconduct claim.  The fact that the Michigan Court of Appeals engaged in plain error review of petitioner's prosecutorial misconduct claim does not constitute a waiver of the state procedural default. *Girts v. Yanai,* 501 F. 3d 743, 755 (6th Cir. 2007).  Instead, this Court should view the Michigan Court of Appeals' review of petitioner's prosecutorial misconduct claim for plain error as enforcement of the procedural default. *Hinkle v. Randle,* 271 F. 3d 239, 244 (6th Cir. 2001).  Petitioner's prosecutorial misconduct claim is procedurally defaulted.

In the present case, petitioner has failed to allege any reasons to excuse his procedural default.  Because petitioner has not alleged or demonstrated any cause for his procedural default, it is unnecessary to reach the prejudice issue regarding his claim. *Smith*, 477 U.S. at 533; *See also Payne v.  Smith,* 207 F. Supp. 2d 627, 638-39 (E.D. Mich. 2002).

Additionally, petitioner has not presented any new reliable evidence to support any assertion of innocence which would allow this Court to consider the prosecutorial

19

misconduct claim as a ground for a writ of habeas corpus in spite of the procedural default. Although petitioner claims that the victim has now recanted her trial testimony, as this Court already indicated in rejecting petitioner's second claim, recantations, particularly those made by the victims of child sexual abuse, are particularly suspect. Because recantation testimony is regarded with "extreme suspicion", the victim's alleged recantation is not the type of reliable evidence that would establish petitioner's actual innocence to excuse his default. *See Carter v. Mitchell,* 443 F.3d 517, 539 (6th Cir. 2006). Because petitioner has not presented any new reliable evidence that he is innocent of these crimes, a miscarriage of justice will not occur if the Court declined to review petitioner's prosecutorial misconduct claim on the merits. *See Payne,* 207 F. Supp. 2d at 639.

Finally, assuming that petitioner had established cause for his default, he would be unable to satisfy the prejudice prong of the exception to the procedural default rule, because his fourth claim would not entitle him to relief. The cause and prejudice exception is conjunctive, requiring proof of both cause and prejudice. *See Matthews v. Ishee,* 486 F. 3d 883, 891 (6th Cir. 2007). For the reasons stated by the Michigan Court of Appeals in rejecting petitioner's prosecutorial misconduct claim, *Parker,* Slip. Op. at * 3, petitioner has failed to show that his claim has any merit. Petitioner's fourth claim is thus barred by procedural default and does not warrant relief.

## IV. Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also

20

deny a certificate of appealability to petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  Likewise, when a district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claims, a certificate of appealability should issue, and an appeal of the district court's order may be taken, if the petitioner shows that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right with respect to any of the claims.  The Court will also deny

21

petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *See Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

**V. <u>ORDER</u>**

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in forma pauperis.*

<u>s/John Corbett O'Meara</u>
United States District Judge

Date:  June 15, 2012

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, June 15, 2012, using the ECF system and/or ordinary mail.

<u>s/William Barkholz</u>
Case Manager